UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

----------------------------------------------------------------------- x

AARON KEATING,                                    Case No.: **3:23-cv-868**

Plaintiff,

-against-                                    <u>**VERIFIED COMPLAINT**</u>

AMAZON WEB SERVICES INC. and AMAZON.COM           <u>**TRIAL BY JURY**</u>
INC. dba AMAZON WEB SERVICES, INC.,               <u>**DEMANDED**</u>

Defendants.

----------------------------------------------------------------------- x

NOW COMES Plaintiff, AARON KEATING (hereinafter "Keating" or "Plaintiff"), by and through undersigned counsel, Tully Rinckey P.L.L.C., and as for his complaint against AMAZON WEB SERVICES INC. and AMAZON.COM INC. dba AMAZON WEB SERVICES, INC. (hereinafter "Defendants"), states:

<u>INTRODUCTION</u>

1.    Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2.    Plaintiff files this Complaint and complains of discrimination on the basis of his military service under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), under 38 U.S.C. § 4301, *et seq.*

3.    Plaintiff files this Complaint and complains of discrimination and retaliation under Family and Medical Leave Act of 1993 ("FMLA"), under 29 U.S.C. § 2601, *et seq.*

<u>THE PARTIES</u>

4.    Keating is an individual resident of Springfield, Pennsylvania.

5.    Defendant Amazon Web Services Inc., herein referred to as "AWS", is a for-profit

corporation incorporated in Washington, which has its headquarters at 410 Terry Ave N, Seattle, WA 98109. AWS is registered to do business in and be sued in Virginia by serving Defendant's registered agent, Corporation Service Company, at 100 Shockoe Slip Fl 2, Richmond, VA, 23219.

6.      Defendant Amazon.com Inc., herein referred to as "Amazon", is a for-profit corporation incorporated in Washington, which has its headquarters at 410 Terry Ave N, Seattle, WA 98109. AWS is a subsidiary of Defendant Amazon, and Defendant Amazon does business through AWS in Virginia. Defendant can be sued in Virginia by serving Defendant's registered agent, Corporation Service Company, at 251 LITTLE FALLS DRIVE, WILMINGTON, New Castle, DE, 19808.

7.      Currently, Keating is employed as a Lead Product Manager for AWS.

8.      Upon information and belief and at all relevant times hereto, Aubrey Fulmer is Keating's supervisor at AWS.

9.      Upon information and belief and at all relevant times hereto, Stylianos Kaminaris is Keating's supervisor at AWS.

10.     Upon information and belief and at all relevant times hereto, Stylianos Kaminaris had the decision-making authority to control the terms, conditions, and privileges of Keating's employment, including promotions and transfers.

11.     Upon information and belief and at all relevant times hereto, David Nolton had the decision-making authority to control the terms, conditions, and privileges of Keating's employment, including promotions and transfers.

<u>JURISDICTION & VENUE</u>

2

12.    This is an action for damages and for injunctive relief pursuant to the Uniformed Services Employment and Reemployment Rights Act, as codified at 38 U.S.C. §4301, *et seq.* (hereinafter "USERRA"), and is within the jurisdiction of this Court pursuant to 38 U.S.C. §4323(b)(2) and 28 U.S.C. §1331.

13.    This is also an action for damages and for injunctive relief pursuant to the Family and Medical Leave Act, as codified at 29 U.S.C. § 2601, *et seq.* (hereinafter "FMLA"), and is within the jurisdiction of this Court pursuant to 38 U.S.C. §4323(b)(2) and 28 U.S.C. §1331

14.    Venue is proper in this judicial district pursuant to 38 U.S.C. §4323(c)(1) and 28 U.S.C. §1391(b), insofar as the acts giving rise to Keating's claim occurred in this judicial district.

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

<u>FACTUAL ALLEGATIONS</u>

16.    Mr. Keating serves as an active member of the U.S. Army Reserves and currently serves as a U.S Army Intelligence Officer.

17.    Keating has been serving for the last sixteen (16) years since 2007 and has reached the level of Major. He also served as a Chief Operations Officer within the continental US and Afghanistan in U.S Special Operation Command (SOCOM) from 2018 through 2019.

18.    Keating has held a security clearance since August 2007.

19.    Keating holds a Bachelor's Degree of Science in Biology from Drexel University and a Master of Business Administration/Juris Doctorate from Rutgers University School of Law and School of Business, specializing in global business and corporate law.

20.    He has worked in the intersecting fields of Compliance, Tax, Finance, and Corporate consulting for the roughly six (6) years preceding his employment with AWS

3

including for the United States Department of Justice and the United States Securities & Exchange Commission, and Price Waterhouse Coopers (PwC).

21.     Mr. Keating has worked with Amazon for 7 years since starting in August 2016.

22.     Keating originally began working for Amazon on-site in Pennsylvania when he first joined in 2016.-

23.     Keating continued working in Pennsylvania for Amazon until 2018, when he then took military leave to be deployed in Afghanistan while still being employed by Amazon.

24.     Keating returned to working for Amazon in Pennsylvania after deployment finished in April 2019.

25.     Shortly after his return from Afghanistan, Keating transferred to work at the Seattle office of Amazon.

26.     On or about September 3, 2019, Keating switched to working under Amazon's subsidiary, AWS.

27.     Keating continued to work in the Seattle office until the COVID pandemic hit the United States in or around March 2020.

28.     Once the pandemic began, Keating moved back to Pennsylvania to continue working for AWS, but now remotely.

29.     Keating still reported back to the Seattle office as his main office despite working remotely.

30.     On or about November 30, 2020, AWS switched Keating's main office for him to report to from Seattle, Washington, to Crystal City, Virginia.

31.     The AWS and Amazon facility in Crystal City, Virginia, is otherwise known as HQ2.

32.     From November 30, 2020, to the present, Keating reported to HQ2, in or around Crystal City, Virginia, as his main office regardless of whether he worked remotely or worked in person at the office.

33.     During his tenure with AWS, Keating has worked many jobs including as Chief of Staff within AWS WW Revenue Operations.

34.     In his current role, Keating leads efforts for AWS within their Public Sector / National Security Cloud Team which managed the provisioning of AWS's Cloud Services to: the United States (U.S) Military; U.S Department of Defense; U.S FVEY Partners (Australia, United Kingdom, New Zealand & Canada); U.S Intelligence Agencies [including Central Intelligence Agency (CIA), Defense Intelligence Agency (DIA), NRO (National Reconnaissance Office), National Geospatial-Intelligence Agency (NGA), Office of the Director of National Intelligence (ODNI)];  Federal Law Enforcement Agencies to include the Federal Bureau of Investigations (FBI);their numerous Mission Partners (including MAXAR Technologies); and others within AWS's  government cloud, secret cloud, and top Secret Cloud (up to SCI) environments.

35.     Currently, Keating has worked his way up to serve as a Lead Product Manager where he handles Product Management and Program Execution.

36.     Keating has led, managed and coordinated the Operational Planning Cycle OP1/OP2, Product Plan of Record (POR), and other projects during his tenure with AWS/Amazon. He has also defined the organizational product strategy, successfully externalized internal product solutions, and served as Organization Force Multiplier. He has created, developed, managed, and led the successful execution of the cross-functional technical sales enablement programs in conjunction with Solution Architect Leadership, Sales Leadership, Product Management and Field Marketing.

37.     AWS and Amazon, as part of the benefits granted to Mr. Keating per his employment contract with Defendants, provided six weeks of paid paternity within the year of the birth of an employee's child, along with the standard twelve weeks of FMLA leave.

38.     AWS and Amazon, prior to 2022, had granted Keating's requests for FMLA leave and paid paternity leave for the birth of each child.

39.     Specifically, AWS and Amazon granted Keating's requests to use FMLA leave and paid paternity leave for the births of his children on two separate occasions: October 16, 2018; and March 5, 2020.

40.     Keating had never experienced any issues with requesting FMLA for his parental duties before 2022.

41.     Mr. Keating is an intelligence Officer for the Army Reserves. Plaintiff has been in the Military for about 17 years. After Keating initially enlisted in January 2007, Keating was commissioned as a second lieutenant in 2010, promoted to first lieutenant in 2012, promoted to Captain in 2015, and most recently promoted to Major in June 2022.

42.     Upon his promotion to being a Field Grade Officer in late 2022, Plaintiff was asked and readily accepted additional duties and responsibilities within his unit. As part of this transition from Company Grade Officer to Field Grade Officer, Plaintiff accepted the position of being the S-2 (Senior Intelligence Staff Officer) for an Army Brigade in the U.S Army Reserves.

43.     During his time in the Army Reserves, Keating has performed notably and been called upon to accept positions on increasing duty and responsibility. Notably, he was asked to serve as the Chief Operations Officer for U.S and NATO Special Operations within Afghanistan in 2018/2019. He has been put in charge of numerous projects, including Army Futures Command initiatives.

44.    As a member of the Army Reserves, Mr. Keating is called to active duty on a regular recurring basis, specifically Title 10 Active Duty. Fortunately for Aaron Keating, Mr. Keating's job duties and training with the U.S. Military enhance his ability to perform his job duties as a Lead Product Manager for Defendants. Mr. Keating has been trained to identify and integrate disparate tech and team members into one cohesive system maximized to be as smooth and efficient as possible. Mr. Keating has used the practical experience and knowledge gained during his Reserve Service to improve operations at AWS.

45.    Mr. Keating also just had his sixth child on or about June 6, 2022.

46.    Instead of taking the full twelve weeks of family/medical leave for the birth of his sixth child immediately, Mr. Keating used two days of vacation, saving his twelve weeks of FMLA Protected Parental Duties (including six weeks of paid paternity leave per Defendants' policy and benefits) for use at a later time but with the full intent to use them before their expiration on or about June 6, 2023.

47.    Since about the end of August of 2022, however, Defendant AWS has tried to prevent and discourage Mr. Keating from serving his country through deployment and from taking leave for family and medical reasons. AWS has done so through indirect pressure on Mr. Keating's management, direct pressure on Mr. Keating himself, and denial of benefits, promotions, and performance bonuses.

48.    Early in 2022, Mr. Keating had been serving as a Lead Strategic Project Manager at AWS. During the almost 2 years that Mr. Keating served on his past team working primarily as a Technical Program Manager "Lead Strategic Technical Program Manager" he garnered positive reviews and was viewed as an asset to his organization.

49.    In July 2022 AWS asked Mr. Keating to Join the AWS Region Services. Mr.

7

Keating agreed to join in order to broaden his career experience and on condition that his current promotion timeline (projected to result in a Q4 2022 Promotion) be honored.

50.    Upon confirmation that this condition would be honored, Mr. Keating agreed to join, effective August 2022, AWS Region Services managed by David Nolton where he, under the management of Aubrey Fulmer and Stylianos Kaminaris, would be responsible for Product Management.

51.    Unfortunately, after transferring to the team in August 2022, Mr. Keating had the misfortune of being supervised by managers Aubrey Fulmer and Stylianos Kaminaris, who viewed Mr. Keating's Military service and FMLA Protected Parental Duties as liabilities rather than assets to the organization.

52.    Ms. Fulmer wrote multiple passive aggressive emails targeting Mr. Keating and creating confusion with poor communication.

53.    For example, Ms. Fulmer accused Mr. Keating on October 13, 2022, of not taking responsibility for his job when Mr. Keating helped schedule a meeting where Ms. Fulmer would present updates to current projects.

54.    While Mr. Keating would not be able to attend the meeting, he made sure to schedule a notetaker for the meeting and write an agenda for Ms. Fulmer and the team to follow.

55.    Unfortunately, Ms. Fulmer registered her displeasure with Mr. Keating's approved absence and stated, "In the future, if you own a meeting, please find someone to run the meeting if you cannot make it. Alternatively, you can reschedule or cancel. It's not a good idea to assume that someone will drive a meeting you own without talking to them in advance."

56.    From the beginning of his time working with her, Ms. Fulmer made it known that Mr. Keating's absences would not be treated positively, even if they were for Mr. Keating's

military service or family/medical leave.

57.     Ms. Fulmer further disclosed her disdain for Mr. Keating's leave in emails that followed after October 13, 2022.

58.     Later, on October 31, 2022, Ms. Fulmer sent Mr. Keating a follow up to a one-on-one meeting he had with her in what he hoped would clear the air between them. Instead, Ms. Fulmer used the email to misrepresent the meeting and admonish Mr. Keating for a multitude of alleged issues.

59.     Ms. Fulmer claimed to Mr. Keating that: "for the past two months you've had trouble with delivering quality work, exhibiting ownership, and earning trust… The quality of the work you are delivering is below standards for your level… You are not exhibiting end to end ownership that is required for your role… You have struggled to earn trust with some of your co-workers on the team."

60.     Each claim was not credibly substantiated, yet Ms. Fulmer confidently represented that each alleged issue needed to be fixed as soon as possible and with her guidance.

61.     In the same email, Ms. Fulmer also stated: "Please keep in mind that if you choose to pursue another role at Amazon, the hiring manager will need to obtain additional approvals to move forward with an internal transfer offer." Ms. Fulmer failed to disclose that Mr. Keating was on focus at that time.

62.     Mr. Keating found the statement alarming because, at this point, he began to consider transferring back to his previous team around that time. In October 2022, Mr. Keating talked to his previous manager, Arvind B., who stated that Mr. Keating would be welcomed back if he were to return. Mr. Keating viewed the email, especially that sentence, as a threat to prevent Mr. Keating from leaving the new team and to do everything Ms. Fulmer wanted, including

9

cutting back on using leave.

63.    Also in October 2022, Keating also reached out to his Skip Level Manager Stylianos Kaminaris to express his concerns working for Ms. Fulmer and asked that he be allowed to switch to another manager. Mr. Keating also believed the issues with Ms. Fulmer were connected to his current and pending Military Duties and family leave.

64.    On or about November 3, 2022, Keating reached out to his former Manager D. Wilson for guidance on the situation. In this meeting, Keating raised his concerns and relayed his issues with Ms. Fulmer.  Mr. Wilson advised Keating that Keating should speak with human resources.

65.    On November 10, 2022, Keating met again with Mr. Kaminaris to discuss his concerns working with Ms. Fulmer including his request for transfer from early October 2022. Keating also discussed that Keating had Military Training coming up that would make the next couple of months minimally highly intermittent.  Keating also discussed that he felt his Military Service was a barrier to his progress on the team especially with Ms. Fulmer and sought assurances that this would not continue yet received none. The response Mr. Keating received from Kaminaris conveyed instead that Mr. Keating only focus on his work, dismissing Mr. Keating's disclosed concerns.

66.    Also on November 10, 2022, Keating met with human resources representative Courtney Gsell shortly after meeting with Mr. Kaminaris. There, Plaintiff again raised his "concerns" of working for Ms. Fulmer. Keating also addressed the prior meeting with Mr. Kaminaris and his concern that he was and would be harmed professionally within his current organization due to his military training. Keating and Gsell discussed Keating's request for transfer from early October 2022. Plaintiff once again requested to be transferred from this

organization and/or no longer work with Ms. Fulmer. However, Keating was told that they did not have the power to take such action, and that was a decision for the business. Plaintiff also sought advice on how to best not be retaliated against for taking his military training. He was advised by HR "to just put it into the time off reporting tool." Based on their conversation, Courtney Gsell also told Keating that he would need to speak to the "Builder Team" based on his concerns raised. Keating also raised the various policy violations that Aubrey Fulmer and Stylianos Kaminaris had taken in order to retaliate against him for his military service.

67.     Ms. Fulmer then sent a "coaching" email to Mr. Keating on November 16, 2022.

68.     Normally, if an employee at AWS like Mr. Keating had been making mistakes, the supervisor would pull the manager aside to discuss potential improvements without creating a formal paper trail that could be seen by the manager as a pretense to the denial of Keating's performance awards, promotion, pay raises, and benefits. However, Mr. Keating found out that Ms. Fulmer still added this to his record. The email itself was not much better, admonishing Mr. Keating for "not consistently delivering. This sentiment was reinforced in Mr. Keating's fears that he was being targeted for taking leave for the military and his family/medical needs. Because of this, Mr. Keating refrained from requesting further leave for many months.

69.     Keating also contacted human resources representative Courtney Gsell to report his concerns regarding the treatment, which Ms. Gsell memorialized in an email on November 17, 2022, and stated, "You expressed a concern that your manager has been treating you less favorably due to your gender. We take all concerns seriously, but concerns relating to protected class areas are especially sensitive, so I have consulted our Builder (Employee) Relations team. Builder Relations is a dedicated team within HR that handles conduct/policy violation investigations within Amazon. You will be hearing from someone within Builder Relations

11

some" Ms. Gsell failed to mention other topics discussed like discrimination based on military service, family/medical leave, and retaliation.

70.    On or about November 30, 2022, through December 1, 2022, Keating met with the HR Builder team. In this meeting, Plaintiff again raised his concerns about working for Ms. Fulmer and Stylianos Kaminaris. He also submitted documentation substantiating his claims to the builder team. The team told Keating that they would conduct an investigation into the matter and get back to him. Plaintiff once again requested a transfer to another team away from Ms. Fulmer.

71.    On December 14, 2022, Keating met again with Stylianos Kaminaris to discuss his ongoing concerns working with Ms. Fulmer and desire to transfer and other issues working on his team. Kaminaris and Keating also discussed that in the next couple of months he was likely to be intermittently out with greater frequency due to military training. In response, Keating was told by Kaminaris basically to just get his work done end of story, "Hey I tell my guys that they need to get their work done."

72.    In or around December 2022, Mr. Keating did not receive the promotion that he was promised as a condition for accepting the transfer to the Diode Team. He knew that he would have received one had he stayed in the group he had been in originally or been allowed to transfer back to that group before December 2022.

73.    In January 2023, the Plaintiff was intermittently out of the office for military training for about 4 Days.

74.    In February 2023, Plaintiff was intermittently out of the office for military training for about 7 days.

75.    On February 9, 2023, Mr. Keating received the results of the investigation of his

claims of retaliation from November 17, 2022, in an email from human resources representative Stefan Paik. In the email, Mr. Paik ruled that he could not substantiate the claims of retaliation and that no further action would be taken at the time. However, Mr. Paik did state, "As a reminder, Amazon prohibits retaliation against anyone who raises a concern or who participates in an investigation. Each party has been reminded of Amazon's policy on retaliation."

76.     On February 13, 2023, Keating met with Courtney Gsell where he once again asked to transfer teams and discussed what the next steps were. Gsell told Keating that any further actions were up to AWS and Amazon and that, from Amazon's perspective, they would take no further action whatsoever on the matter. Keating then was referred to the non-retaliation policy as his only remedy against further discrimination and retaliation.

77.     On or about February 27, 2023, Aubrey Fulmer notified Mr. Keating that she would be away for the week on FMLA leave.

78.     In an email from Ms. Fulmer on February 23, 2023, Ms. Fulmer stated, "You are entitled to take leaves of absence that you are eligible for, so I want to make you sure you have information on the resources that Amazon has available."

79.     On March 8, 2023, Plaintiff also successfully launched "Diode Messaging" a new Product Offering withing AWS Region Services.

80.     Then, on or about March 9, 2023, Mr. Keating placed an Out of the Office (OOTO) Calendar Reminder on the Diode Team Calendar, noting that he was taking Military Leave, Paternity Leave and vacation time. Importantly, Mr. Keating's upcoming leave had already been notified to his team via the calendar, which had previously been scheduled for January 2023 but was delayed to March 2023 because of a project schedule. The delay had been properly shown in the calendar for all to notice. The Military Leave would begin soon thereafter

and would intersect with his already calendarized April 2023 FMLA leave, and the FMLA leave would begin in May 2023. Mr. Keating was using leave under USERRA, FMLA, and the benefits he agreed to in his employment contract. Mr. Keating had already mentioned the leave request to AWS. Mr. Keating also stated in his email, "Held off as long as I could to support Diode Messaging Launch (which is/was thankfully a success)." However, Mr. Kaminaris mentioned this was a surprise to him and that Mr. Keating did not give enough of an advance notice to coordinate. Mr. Kaminaris also stated, "This is very disappointing." Keating Immediately escalated to Stylianos's Manager (Neil Saval) and skip Level (David Nolton) and HR Leadership.

81.    Concurrent with the disapproving email that Plaintiff received from Stylianos Kaminaris on or about 9 March 2023, Keating heard that same day from Aubrey Fulmer that Keating would need to provide coverage for all meetings while he was away on his Military Leave which was scheduled for the following three weeks in March 2023.

82.    Alarmed by Mr. Kaminaris' response, Mr. Keating brought it to human resources' attention via email on that same day. Mr. Keating asked HR to assist and escalated with the intention of quickly resolving the issue of the matter to AWS Head of HR Ian Wilson and his Business Line VP David Nolton. Notably to date, he has received no answer.

83.    On March 13, 2023, human resources representative Courtney Gsell emailed a response to Mr. Keating stating that the FMLA leave had yet to be approved and that his USERRA requests, while automatically granted, required seven-days' notice every time. The message conflicted with the previously mentioned email from Ms. Fulmer on February 23, 2023. Notably, Ms. Gsell (Amazon HR's representative) did not address Mr. Keating's concerns voiced in his email (prime among them USERRA and FMLA Discrimination by his immediate

management), but instead attempted to phrase the issue as one around inputting leave into a portal.

84.    On March 31, 2023, Keating again met with Gsell. Keating met with Courtney Gsell to discuss the email he has sent in response to Mr. Kaminaris' Email dated March 9, 2023. In this meeting, Keating re-iterated his request to change teams. Keating also expressed dismay at how this whole ordeal and discrimination against him had put him off the promotion path that he was already on and had worked towards over the past several years. Keating requested remedy but did not receive any additional response. Instead, he was asked "what part of Kaminaris' email dated March 9, 2023, was the problem which completely discounted the severity of the email and the impact that it would have on Plaintiff's career. Notably in this meeting, Keating also re-iterated his request to change teams and be put back onto the Promotion Track that he was on prior to joining the team. In response, Ms. Gsell acting as Amazon HR stated that this was a "business decision" and that she could/would take no action.

85.    In April 2023, Keating received his performance appraisal where he saw that Defendants had left it incomplete including missing ratings and manager feedback.

86.    From March through April 2023 and Late May 2023 to the present, Keating attended his military training.

87.    On June 29, 2023, Plaintiff, through his counsel, served a confidential offer of compromise, notifying Defendants of Plaintiff's concerns under USERRA and FMLA. Defendants, through their counsel, responded shortly after.

88.    On or about 13 July 2023, Keating was advised by Amazon HR representative Courtney Gsell that Ms. Gsell would not be his point of contact for HR matters "during the pendency of this matter at least 7/18 but perhaps longer" by Defendants' counsel, leaving

15

Keating with the impression that all matters would go through Defendants' attorney.

89.    In or around later October 2023, Plaintiff received an email from Defendants while he was on military leave asking him to resubmit documents regarding Leave and Earnings Statements (LES), despite timely sending those in throughout the year.

90.    In or around early November 2023, Mr. Keating noticed that Defendants had been going into his online account and adjusting his military leave so that days that had originally been listed as workdays or as vacation days were now listed as military leave without Keating's authorization.

91.    On November 7, 2023, Plaintiff received a phone call and an email from representatives of Defendants' Leave and Disability team claiming that Plaintiff had been overpaid while he was out on military leave and that Plaintiff owed Defendants a total of $8,785.56.

92.    On November 8, 2023, Plaintiff received an email while serving on Active Duty from his Military Supervisor asking Plaintiff if an email from Amazon "was legit." The email in question was from Amazons Leave and Disability Investigations team and alleged wrongdoing on the part of Plaintiff. In the email, it asked Keating's Military Supervisor to re-confirm dates of training that had already been confirmed by Plaintiff via documentation that Plaintiff previously submitted and had included the name of his Military Supervisor.

93.    On November 9, 2023, Defendants again demanded via email that Plaintiff needed to return the alleged overpayment of $8,785.56.

94.    On November 21, 2023, Plaintiff's wife received a call from a representative of Defendants claiming that they needed to conduct a "welfare check" on Plaintiff.

95.    Despite Mr. Keating's outstanding performance with both AWS and within his

reserve unit, Mr. Keating has not received his benefits as guaranteed by contract and by federal statute.

96.     As a member of the Army Reserves, Keating conducts service in the Uniformed Services under USERRA.

97.     Keating qualifies as a protected employee under USERRA.

98.     Defendant AWS qualifies as an employer covered by USERRA.

99.     Defendant Amazon qualifies as an employer covered by USERRA.

100.    Keating has been an employee of AWS, and Amazon by extension, for at least 12 months as of at least January 1, 2022.

101.    Keating has at least 1,250 hours of service with AWS, and Amazon by extension, during the 12 months before his FMLA leave would have started if he had taken it on June 6, 2022.

102.    Keating has at least 1,250 hours of service with AWS, and Amazon by extension, during the 12 months before his FMLA leave would have started if he had taken it on June 6, 2023.

103.    Keating currently works at the AWS and Amazon facility in Crystal City, Virginia.

104.    Keating has worked at the Crystal City facility since at least June 1, 2021.

105.    The Crystal City facility for AWS and Amazon has at least 50 employees within 75 miles since at least June 1, 2021.

106.    Defendant AWS is an employer covered by the FMLA.

107.    Defendant Amazon is an employer covered by the FMLA.

108.    Keating qualifies as an employee covered by the FMLA.

<u>FIRST CAUSE OF ACTION</u>
(Discrimination under 38 U.S.C. §§ 4301 *et seq.*)

109.    Keating realleges and incorporates the allegations of Paragraphs 1 through 108 of this complaint as if set forth fully herein.

110.    The prevailing purpose of USERRA is to encourage non-career military service, minimize disruption based on such service, and prevent discrimination against service members. *See* 38 U.S.C. § 4301.  The United States Supreme Court has repeatedly recognized that USERRA is "to be liberally construed for the benefit of those who left private life to serve their country."  *See,* <u>Fishgold v. Sullivan Drydock & Repair Corp.</u>, 328 U.S. 275, 285 (1946).  As such, USERRA prohibits discrimination and reprisal against members of the uniformed service.

111.    USERRA § 4311(a) states that "a person who is a member of… uniformed service shall not be denied…retention in employment…or any benefit of employment by an employer on the basis of that membership…" The term "benefit of employment" is quite broad and includes a service member's right to freedom from harassment and a hostile work environment. *See,* 38 U.S.C. § 4303(2). …"  The statute goes on to state that, "[a]n employer shall be considered to have engaged in actions prohibited…under subsection (a), if the person's membership,…service,…or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership,…service,…or obligation for service." § 4311(c)(1). As such, once an employee shows that his military service was a "motivating factor" in denials of promotion, pay raises, benefits, and performance awards, the employer bears the burden of proving that it would have terminated the employee's position in the absence of the employee's service.

112.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris violated USERRA §

18

4311(a) by wrongfully denying Mr. Keating performance awards, promotions, benefits, and pay raises. Mr. Keating was a hard-working employee whose dedication, talent, and work product resulted in his assignment to the Diode team in August 2022. He successfully worked for AWS and Amazon since 2016. However, throughout 2022 and into the beginning of 2023, Keating was deployed to military training multiple times, and when he returned, Ms. Fulmer and Mr. Kaminaris began micromanaging him, ostracizing him, and writing him up on unsupported grounds. It is clear that Keatings' military schedule inconvenienced and irritated Ms. Fulmer and Mr. Kaminaris, as both would give Keating an email of counseling, email their annoyance with Keating's military leave, berated him without reason, and denied Keating's promotion and performance awards. Both criticized Keating for being unavailable while attending military duty.

113.    Significantly, the same day that Keating notified Kaminaris of his upcoming military leave Kaminaris emailed Keating his disdain for Keating's absences for military leave and FMLA leave. The close proximity between the date that Keating notified of his deployment and the date that he was placed on indefinite suspension makes it clear that Keating's military status was a motivating factor in AWS' and Amazon's decision to deny Mr. Keating performance awards, promotions, benefits, and pay raises. *See*, Maxfield v. Cintas Corp. No. 2, 427 F.3d. 544, 552 (8th Cir. 2005); Hance v. Norfolk Southern Ry. Co., 571 F.3d. 511 (6th Cir. 2009) (Employer's liability was based in part on plaintiff's termination upon return from two-week training).

114.    AWS and Amazon will not be able to prove that it would have denied Mr. Keating performance awards, promotions, benefits, and pay raises to Keating in the absence of Keating's service.

115.    AWS and Amazon further violated USERRA by subjecting Mr. Keating to constant harassment and discrimination immediately after he returned to work after his

19

deployment. <u>Hance v. Norfolk Southern Ry. Co.,</u> 571 F.3d 511, 518 (6th Cir. 2009). Again, Ms. Fulmer and Mr. Kaminaris berated Keating over his use of leave because he was unavailable while on military duty, denied him promotions and performance awards by issuing the counseling email and subjecting him to an investigation, and threatened him.

116.    38 U.S.C. §4311(a) provides that an employee may not be denied a promotion because of the employee's membership in the uniformed service.

117.    AWS and Amazon discriminated against Keating in violation of USERRA when they utilized absences from work due to military service in the United States Army Reserves for disciplinary purposes and was the basis for the conspiracy to discriminate against Keating.

118.    Keating's military service was a motivating factor in the actions taken by AWS, Amazon, Ms. Fulmer, and Mr. Kaminaris.

119.    As a direct and proximate result of the conduct by AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris, Keating has suffered injury including but not limited to denial of promotion, loss of wages, job assignments, retirement savings, time in service, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his denial of benefits, pay raises, promotion, and performance awards.

<u>SECOND CAUSE OF ACTION</u>
(Retaliation under 38 U.S.C. § 4311(b))

120.    Keating realleges and incorporates the allegations of Paragraphs 1 through 119 of this complaint as if set forth fully herein.

121.    USERRA prohibits retaliation for having taken an action to enforce a protection afforded an individual under USERRA or for having exercised a right provided for under USERRA.  Specifically, 38 U.S.C. §4311(b) provides that an employer may not discriminate in employment or take any adverse employment action against any person regardless of whether

20

they have performed service in the uniformed service.

122.    On numerous occasions, Keating was warned by AWS, Amazon, Ms. Fulmer, and Mr. Kaminaris that he was putting too much effort into his duties and responsibilities with the United States Army Reserves and wasn't sufficiently dedicated to his job and his coworkers in response to his military leave.

123.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's continued performance of his military service obligation by participating and/or being complicit in a conspiracy to deny Keating of performance awards, promotions, benefits, and pay raises.

124.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's continued performance of his military service obligation by creating a hostile work environment for Keating incident to Keating's military service.

125.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's continued performance of his military service obligation by claiming that they had overpaid Keating, and that Keating must pay back over $8000 that he had been paid while on military leave.

126.    Keating's military service was a motivating factor in the retaliation against Keating by AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris.

127.    As a direct and proximate cause of the actions of AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris, Keating has suffered injury including but not limited to denial of promotion, loss of wages, job assignments, retirement savings, time in service, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his denial of benefits, pay raises, promotion, and performance awards.

## THIRD CAUSE OF ACTION
### (Denial of Benefits of Employment under 38 U.S.C. § 4311(a))

128.    Keating realleges and incorporates the allegations of Paragraphs 1 through 127 of this complaint as is set forth fully herein.

129.    USERRA provides that a person who performs military service shall not be denied any benefit of employment on the basis of that service. The term "benefit of employment" is quite broad and, as it is defined at 38 U.S.C. § 4303(2), refers to "any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan or practice."

130.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris created an environment in which it was clear Keating's military service was unwelcome and a detriment to his career at AWS.

131.    Per Defendants' Policy, Plaintiff was entitled to six weeks of paid paternity within the year after the birth of his child in June 2022. Defendants, however, have denied the benefit and interfered with the benefit.

132.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris made inappropriate, hostile comments to Keating about his military service that exceeded the standards of a tolerable workplace environment.

133.    The opportunity of an employee in AWS to perform his duties and responsibilities in a workplace environment free from hostility, free from animus towards military service, is a "benefit of employment" as that term is broadly defined under 38 U.S.C. §4303(2).

134.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris denied Keating benefits of employment when they denied his request for leave, denied performance awards,

promotions, and pay raises which permitted the existence of a hostile work environment against Keating motivated by his military service.

135.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris denied Keating benefits of employment when inappropriate, hostile comments were made to Keating directly and indirectly about his military service.

136.    Keating's military service was a motivating factor in the actions taken by AWS, Amazon, Ms. Fulmer, and Mr. Kaminaris.

137.    As a direct and proximate result of the continuous, harassing behavior of AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris, Keating has suffered injury including but not limited to denial of promotion, loss of wages, job assignments, retirement savings, time in service, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his denial of benefits, pay raises, promotion, and performance awards.

FOURTH CAUSE OF ACTION
(Interference under 29 U.S.C.A. § 2601, *et seq.*)

138.    Keating realleges and incorporates the allegations of Paragraphs 1 through 137 of this complaint as if set forth fully herein.

139.    FMLA allows for qualified employees to use their annual FMLA leave entitlement for a variety of reasons, including caring for a newly born or adopted child. *See* 29 U.S.C. § 2601 (b)(2).

140.    To qualify for leave under the FMLA, an employee must (1) work for a covered employer, (2) work 1,250 hours during the 12 months prior to the start of leave, (3) work at a location where 50 or more employees work at that location or within 75 miles of it, and (4) have worked for the employer for 12 months. *See* 29 U.S.C. § 2601.  The 12 months of employment are not required to be consecutive in order for the employee to qualify for FMLA leave. *See* 29

U.S.C. § 2601.

141.    A break in service due to an employee's fulfillment of military obligations must be taken into consideration when determining whether an employee has been employed for 12 months or has the required 1,250 hours of service. *See* 29 U.S.C. § 2601. Hours that an employee would have worked but for his or her military service are credited toward the employee's required 1,250 hours worked for FMLA eligibility. *See* 29 U.S.C. § 2601.

142.    The United States Supreme Court has repeatedly recognized that USERRA is "to be liberally construed for the benefit of those who left private life to serve their country." *See,* Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285 (1946).

143.    Under FMLA, AWS and Amazon are covered employers.

144.    Keating worked 1,250 hours during the 12 months prior to when the leave would have started on June 6, 2022.

145.    Keating worked 1,250 hours during the 12 months after June 6, 2022.

146.    Keating, while working those 2,500 hours during the 24 months surrounding June 6, 2022, worked at or otherwise had work headquartered at the Crystal City facility called HQ2 for AWS and Amazon.

147.    HQ2 had 50 or more employees working at the location or had work headquartered at the location or within 75 miles of the location.

148.    Keating worked for over 12 months for AWS and Amazon before June 6, 2022.

149.    Keating worked for over 12 months for AWS and Amazon after June 6, 2022.

150.    Therefore, Keating satisfies all elements to qualify for FMLA coverage.

151.    Keating only took two days of vacation in lieu of his paid paternity leave and the twelve weeks he was owed of his FMLA parental leave in lieu of the paternity leave associated

with the birth of his child on June 6, 2022.

152.    FMLA prohibits interference against employees for attempting to use family

and/or medical leave under the Act. *See* 29 U.S.C. § 2615. To establish Family and Medical

Leave Act (FMLA) interference claim, employee must show that: (1) employee was eligible for

FMLA protections; (2) employer was covered by FMLA; (3) employee was entitled to leave

under FMLA; (4) employee provided sufficient notice of intent to take FMLA leave; and (5)

employer denied or interfered with FMLA benefits to which employee was entitled. *See* 29

U.S.C.A. § 2615(a)(1). Employee asserting FMLA interference claim is not required to show he

was denied FMLA rights; interference or restraint without denial is sufficient. *See* 29 U.S.C. §

2615(a)(1).

153.    AWS and Amazon violated FMLA § 2615 by denying Mr. Keating his medical

leave request for the birth of his sixth child on June 6, 2022. Mr. Keatings, as discussed

throughout this complaint, was a hard-working employee whose dedication, talent, and work

product resulted in his assignment to the Lead Strategic Project Manager for Defendants in 2022.

He also had three children while working for Defendants, with the first two leading to him being

granted the full unhindered use of Amazon week Paid Paternity Leave and not interfering with

Plaintiff's access to his full 12 Week FMLA Allowance  in 2018 and 2020. However, in 2023,

Defendants interfered with Mr. Keating's ability to use the full six weeks of paid parental leave

and the full twelve weeks of FMLA leave both associated with the birth of his sixth child on June

6, 2022, despite granting him six weeks of paid parental leave and not interfering with Plaintiff's

access to his twelve weeks of FMLA leave for each of Keating's previous two childbirths in

2018 and 2020. Mr. Keating took two days of vacation for the birth of his child on June 6, 2022,

but according to FMLA, he was allowed to use up the rest of his six-week parental leave within

the calendar year starting from June 6, 2022. When Keating requested to use his FMLA leave, Ms. Fulmer, and then Mr. Kaminaris, began micromanaging him and ostracizing him. Not only did Aubrey Fulmer and Stylianos Kaminaris make it clear that they disliked employees taking time off work and expressed irritation, Ms. Fulmer, and then Mr. Kaminaris, issued unsupported emails of counseling, berated him without reason, and denied him promotions and performance awards to Keating.

154.    Under FMLA, Keating was entitled to the full twelve-week parental leave for his child's birth on June 6, 2022, like he had previously received in 2018 and 2020.

155.    Keating provided sufficient notice of his FMLA leave when he requested and then took two days of leave on or around June 6, 2022, for the birth of his sixth child, notifying that he still intended to use the full six weeks to which he was entitled to within the calendar year.

156.    Keating also provided sufficient notice of intent to take FMLA leave when Mr. Keating placed an Out of the Office (OOTO) Calendar Reminder on the Diode Team Calendar on March 9, 2023, for his leave starting April 2023.

157.    AWS and Amazon will not be able to prove that it would have denied Mr. Keating performance awards, promotions, benefits, and pay raises to Keating in the absence of Keating's service.

158.    29 U.S.C. § 2615 provides that an employee may not be denied a promotion because of the employee's request for FMLA leave.

159.    Amazon and AWS interfered with Keating's request for medical leave in violation of FMLA when they denied Mr. Keating performance awards, promotions, benefits, and pay raises.

160.    Keating's FMLA leave was a motivating factor in the actions taken by AWS,

26

Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris.

161.     As a direct and proximate result of the conduct by AWS, Amazon, Ms. Fulmer, and Mr. Kaminaris, Keating has suffered injury including but not limited to denial of promotion, loss of wages, job assignments, retirement savings, time in service, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his denial of benefits, pay raises, promotion, and performance awards.

FIFTH CAUSE OF ACTION
(Retaliation under 29 U.S.C.A. § 2601, *et seq.*)

162.     Keating realleges and incorporates the allegations of Paragraphs 1 through 161 of this complaint as if set forth fully herein.

163.     FMLA prohibits retaliation for having taken an action to enforce a protection afforded an individual under FMLA or for having exercised a right provided for under FMLA. *See* 29 U.S.C. § 2614-2615. To succeed on FMLA retaliation claim by circumstantial evidence, it is plaintiff's burden to establish that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *See* 29 U.S.C. § 2601 *et seq.*

164.     Keating is a protected employee under FMLA.

165.     Keating invoked his right to FMLA- qualifying leave on at least two occasions: 1) when he requested and took two days off for the birth of his sixth child on or about June 6, 2022; and 2) when he placed an Out of the Office (OOTO) Calendar Reminder on the Diode Team Calendar on March 9, 2023, for his leave starting April 2023.

166.     AWS, Amazon, Ms. Fulmer, and Mr. Kaminaris took adverse actions against Keating by denial of benefits, pay raises, promotion, and performance awards, including in December 2022 when he was specifically denied his promotion.

167.    On numerous occasions, Keating, when he brought up medical leave, had his concerns about taking leave dismissed by AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris.

168.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's use of medical leave by participating and/or being complicit in denial of benefits, pay raises, promotion, and performance awards of Keating.

169.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's request for medical leave by creating a hostile work environment for Keating.

170.    Keating's request for medical leave was a motivating factor in the retaliation against Keating by AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris.

171.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's continued performance of his military service obligation by claiming that they had overpaid Keating and that Keating must pay back over $8000 that he had been paid while on military leave.

172.    As a direct and proximate cause of the actions AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris, Keating has suffered injury including but not limited to denial of benefits, pay raises, promotion, and performance awards, loss of wages, job assignments, retirement savings, time in service, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his denial of benefits, pay raises, promotion, and performance awards.

### SIXTH CAUSE OF ACTION
(Denial of Benefits of Employment under 29 U.S.C. § 2601, et seq)

173.    Keating realleges and incorporates the allegations of Paragraphs 1 through 172 of

this complaint as is set forth fully herein.

174.    FMLA provides that a person who performs military service shall not be denied any benefit of employment on the basis of that service. The term "benefit of employment" is quite broad and, as it is defined at 29 U.S.C. § 2601, et seq, refers to "any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan or practice."

175.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris created an environment in which it was clear Keating's FMLA leave was unwelcome and a detriment to his career at AWS and Amazon.

176.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris made inappropriate, hostile comments to Keating about his military service that exceeded the standards of a tolerable workplace environment.

177.    The opportunity of an employee in the AWS and Amazon to perform his duties and responsibilities in a workplace environment free from hostility, free from animus towards military service, is a "benefit of employment" as that term is broadly defined under 29 U.S.C. § 2601, et seq.

178.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's use of medical leave by participating and/or being complicit in denial of benefits, pay raises, promotion, and performance awards of Keating.

179.    AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris retaliated against Keating for Keating's request for medical leave by creating a hostile work environment for Keating.

180.    Keating's request for medical leave was a motivating factor in the retaliation against Keating by AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris.

181.    As a direct and proximate result of the continuous, harassing behavior of AWS, Amazon, Ms. Fulmer, Mr. Nolton, and Mr. Kaminaris, Keating has suffered injury including but not limited to denial of benefits, pay raises, promotion, and performance awards, denial of promotion, loss of wages, job assignments, retirement savings, time in service, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his denial of benefits, pay raises, promotion, and performance awards.

<u>DEMAND FOR JURY TRIAL</u>

Keating demands trial by jury pursuant to Fed.R.Civ.P. 38 of all issues so triable at law.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Keating demands judgment:

A.    On all causes of action, as against AWS, Amazon, Ms. Fulmer, Mr. Nolton and Mr. Kaminaris, jointly and severally, for (a) compensatory damages (b) injunctive relief, (c) an order requiring compliance pursuant to 38 U.S.C. §4323(d)(1)(A), (d) an order requiring compliance pursuant to 29 U.S.C. § 2617(a)(2), and (e) costs of suit, inclusive of reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. §4323(h)(2) and 29 U.S.C. § 2617(a)(3);

B.    On all causes of action, for appropriate interest, costs and disbursements, and any and all other relief against AWS, Amazon, Ms. Fulmer, and Mr. Stylianos, as this Court may deem proper.

Dated: December 26, 2023                    AARON KEATING

30

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that this Complaint was filed via ECF on this 26th day of December, 2023, with a copy mailed to the undersigned parties:

Aaron Keating
267 N. Rolling Road
Springfield, PA  19064

Stephanie Moll, Esq.
Morgan, Lewis & Bockius, LLP
1000 Louisiana Street, STE 4000
Houston, TX 77002-5005
*Counsel for AWS and Amazon*

Respectfully Submitted,

/s/ *Pamela Johnson Branch*

Pamela Johnson Branch, Esq., VA Bar No. 41008
Sean C. Timmons, Esq.
Nathan Z. Simmons, Esq.
Tully Rinckey, PLLC
2001 L Street, N.W.
Suite 902
Washington, D.C. 20036
202-375-2241 (office)
pbranch@fedattorney.com
*Counsel for Plaintiff*